IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| Richard Fekete, | C/A No. 0:16-cv-3419-JFA |
| Plaintiff, | |
| v. | **ORDER** |
| Encompass Insurance Co. and Ironshore Indemnity, Inc., | |
| Defendants. | |

This matter is currently before the Court on Defendant Ironshore's ("Ironshore") Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF No. 22). In its Memorandum in Opposition to Ironshore's Motion for Summary Judgment, Plaintiff Richard Fekete ("Plaintiff" or "Fekete") advises the Court that he stipulates to the dismissal of the following claims against Ironshore: bad faith, unjust enrichment, and defamation. (ECF No. 30 p. 1). Thus, the Plaintiff's cause of action for breach of contract remains.

I.      FACTUAL HISTORY

On October 22, 2013, Plaintiff' house located at 2040 Gold Hill Road in Fort Mill, SC caught on fire and was damaged along with some of Plaintiff's personal belongings.

(ECF No. 1-1). Thereafter, the York County Sheriff's Office and G4S Compliance and Investigations investigated the scene. (ECF No. 23-3).

After the fire, Plaintiff filed a personal auto insurance claim with the Defendant (the "Claim"). (ECF No. 1-1 p. 12). Plaintiff alleged that one of his vehicles, a Cobra Mustang GT350[1] (the "Vehicle"), was insured and that it was destroyed in the fire. (ECF No. 30 p. 2). The Vehicle was allegedly parked in the garage at the time the house caught on fire and was destroyed. (ECF No. 23-3).

After Plaintiff filed the Claim, York Risk Services Group, Inc. ("YRS"), the claim administrator for Ironshore Indemnity, Inc., sent Plaintiff a reservation of rights letter, which stated the following:

> Based on our preliminary review of the materials forwarded to us, there is a question concerning whether coverage under the referenced policy exists for this claim. Accordingly, we are going to conduct an investigation of these issues. Our investigation is being undertaken under a reservation of Ironshore Indemnity, Inc.'s rights, including the right to decline coverage with respect to the claim.

(ECF No. 23-2).

Thereafter, G4S Compliance & Investigations investigated the incident on behalf of Ironshore. (ECF No. 23-3). A Uniform Suspected Insurance Fraud Reporting Form ("Fraud Form") was issued thereafter, detailing the findings of the investigation. (ECF No. 23-3).

The Fraud Form notes the following:

> Burn patterns on the floor in the kitchen area indicated a combustible fluid was poured on the floor in a trail from the kitchen to the interior door

---

[1] The vehicle identification number (VIN) of this vehicle was SFM5S326.

leading to the garage. The natural gas line to the hot water heater was disconnected, apparently broken off, and caused the garage to fill with gas. This gas was then ignited by the flame from the trail of combustible fluid. This resulted in an explosion in the garage which blew the overhead garage door off its tracks and across the driveway and into a small tree. . . .

G4S Investigator Jones forwarded a copy of his file documents and reports to Detective John Martin, Arson Investigator for the York County Sheriff's Office. On October 24, 2013 G4S Compliance & Investigations was contracted by York Risk Services Group, Inc., to meet with the state and local fire investigators . . . and conduct a full fire investigation, with an emphasis on confirming that the vehicle damaged in the fire was one of the two 1965 Shelby Cobra GT 350s for which coverage [was] provided under the insurance policy. *A thorough investigation of the damaged vehicle determined that the vehicle damaged in the fire was not a 1965 Shelby Cobra GT 350* and as a result, a search warrant was issued for the Insured's business.

(ECF No 23-3 p. 1).

On November 2, 2013, Plaintiff was arrested and subsequently charged with one count of third-degree arson and two counts of making a false claim or statement in support of a claim to obtain insurance benefits for a fire or explosion loss. (ECF No. 23-4 p. 6). The case, styled *The State of South Carolina vs. Richard Fekete*, was filed on November 4, 2013. (ECF No. 23-4 p. 6). On May 12, 2015, Plaintiff entered a guilty plea, pursuant to *Alford*, to "Arson / Making false insurance claim to obtain benefits for fire or explosion loss" in violation of S.C. Code Ann. § 16-11-125, bearing CDR Code 0508. (ECF No. 23-4 p. 1, 6). Plaintiff received a five (5) year prison sentence suspended on service of three (3) years of probation. (ECF No. 23-4 p. 1).

## II.  LEGAL STANDARD

### A.  SUMMARY JUDGMENT

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of material fact is "genuine" if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248–49.

The moving party bears the initial burden of showing the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets that burden and a properly supported motion is before the court, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 323. All inferences must be viewed in a light most favorable to the non-moving party, but he "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

### B.  INSURANCE CONTRACT CONSTRUCTION

"Under South Carolina law, 'the obligation of a liability insurance company to

defend and indemnify is determined by the allegations in the complaint.'" *Liberty Mut. Fire Ins. Co. v. General Info. Servs., Inc.*, 22 F. Supp. 3d 597, 600 (E.D. Va. 2014) (citing *Collins Holding Corp. v. Wausau Underwriters Ins. Co.*, 397 S.C. 573, 577, 666 S.E.2d 897, 899 (2008)). "If the facts alleged in the complaint fail to bring a claim within the policy's coverage, the insurer has no duty to defend." *Id.* "The insured must show that the underlying complaint creates a 'reasonable possibility' of coverage under the insurance policy." *Id.* at 600–01 (citing *Gordon Gallup Realtors Inc. v. Cincinnati Ins. Co.*, 274 S.C. 468, 471, 265 S.E.2d 38, 40 (1980)). "The burden of proof is on the insured to show that a claim falls within the coverage of an insurance contract," and "[t]he insurer bears the burden of establishing exclusions to coverage." *Id.* at 601 (internal quotations omitted) (citing *Sunex Int'l, Inc. v. Travelers Indem. Co.*, 185 F. Supp. 2d 614, 617 (D.S.C. 2001)).

## C.    BREACH OF CONTRACT

Under South Carolina law, a plaintiff seeking to establish breach of contract "must establish three elements: (1) a binding contract entered into by the parties; (2) breach or unjustifiable failure to perform the contract; and (3) damage as a direct and proximate result of the breach." *Advanced Pain Therapies, LLC v. Hartford Fin. Servs. Group, Inc.*, No. 3:14-cv-00050-MGL, 2014 WL 4402800, at *2 (D.S.C. Sept. 3, 2014) (citing *Bank v. How Mad, Inc.*, 4:12-cv-3159, 2013 WL 5566038, *3 (D.S.C. Oct. 8, 2013)). Furthermore, "the elements of a bad faith refusal to pay insurance benefits cause of action are '(1) the existence of a contract of insurance between the parties; (2) refusal by the

insurer to pay benefits due under the contract; (3) resulting from the insurer's bad faith or unreasonable action; and (4) causing damage to the insured.'" *Id.* (citing *Snyder v. State Farm Mut. Auto. Ins. Co.*, 586 F. Supp. 2d 453, 457 (D.S.C. 2008)).

## III.    ANALYSIS

The Defendant asserts that Plaintiff's guilty plea under *Alford* establishes Plaintiff's fraudulent behavior. Defendant thus argues that Plaintiff should be foreclosed from pursuing insurance benefits for the loss of his vehicle, which was insured under the Policy issued by Defendant. Therefore, Defendant asserts that it is entitled to summary judgment on Plaintiff's breach of contract claim. (ECF No. 23 p. 3).

In South Carolina, it is undisputed that "[t]he 'entry of an *Alford* plea at a criminal proceeding has the same preclusive effect as a standard guilty plea' so that defendants 'must likewise accept the collateral consequences of that decision.'" *Frontier Commc'ns of the Carolinas, LLC v. Int'l Brother. of Elec. Workers, Local 1431*, No. 4:14-367-BHH, 2015 WL 1400096 (D.S.C. Mar. 26, 2015) (citing *Zurcher v. Bilton*, 379 S.C. 132, 136–38, 666 S.E.2d 224, 227 (2008); *see also Surran v. Kuntz*, No. L-06-1380, 2008 WL 11363275, at *4 (D.Md. Jun. 3, 2008) (finding that defendant's *Alford* plea, and thus "his knowing and voluntary acknowledgement that the government had sufficient evidence to prove his guilt," was admissible evidence to prove his guilt in the underlying civil lawsuit).

In *Zurcher v. Bilton*, the Supreme Court of South Carolina held that a defendant who enters an *Alford* plea in a criminal proceeding is collaterally estopped from litigating

the issue in a subsequent civil action based on the same facts underlying the plea. *Zurcher*, 379 S.C. at 137–38, 666 S.E.2d at 227. In *Zurcher*, the plaintiff entered a Ford dealership and assaulted an individual after an argument ensued over a referral fee. *Id.* at 134, 666 S.E.2d at 226. The plaintiff was subsequently charged with assault and battery, and he subsequently entered a guilty plea under *Alford*, pleading guilty to the assault and battery charge. *Id.* at 134, 666 S.E.2d at 226–27. Thereafter, the victim of the assault and battery brought a civil suit against the plaintiff for the very same assault and battery. *Id.* at 134–35, 666 S.E.2d at 226. The court granted the victim summary judgment on the civil claims and held that plaintiff was "bound by his *Alford* plea," and he was thus "precluded from denying liability in the subsequent civil action with [the victim]." *Id.* at 137–38, 666 S.E.2d at 227.

The court reasoned,

> An *Alford* plea is not distinguishable from a standard guilty plea . . . . An Alford plea—a guilty plea accompanied by an assertion of innocence—was held to be a constitutional admission of guilt in *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). The *Alford* court reasoned that so long as a factual basis exists for a plea, the Constitution does not bar sentencing a defendant who makes a calculated choice to accept a beneficial plea arrangement rather than face overwhelming evidence of guilt. 400 U.S. at 38, 91 S.Ct. 160. Under this same reasoning, we find that the defendant must likewise accept the collateral consequences of that decision. Therefore, we hold that the entry of an *Alford* plea at a criminal proceeding has the same preclusive effect as a standard guilty plea.

*Id.* at 136–37, 666 S.E.2d at 227. The court further clarified: "a party who has pleaded guilty under *Alford* in a previous criminal proceeding is collaterally estopped from litigating the issue in a subsequent civil action based on the same facts underlying the plea." *Id.* at 138, 666 S.E.2d at 227–28.

The Policy provides, in pertinent part: "We will not pay for: . . . Any loss or damage intentionally caused by you or any 'family member.'" (ECF No. 22-6 p. 15). Moreover, regarding fraud, the Policy provides the following:

**FRAUD**

We do not provide coverage for any "insured" *who has made fraudulent statements or engaged in fraudulent conduct* in connection with any accident or loss for which coverage is sought under this policy.

(ECF No. 22-6 p. 17) (emphasis added).

In this case, Plaintiff entered a guilty plea pursuant to *Alford* to making a false insurance claim to obtain benefits for fire loss, as well as a count of third-degree arson. (ECF No. 23-4). Fekete subsequently brought this action, seeking reimbursement for the vehicle that was destroyed in the fire. As the court in *Zurcher* noted, Fekete cannot now claim that he is entitled to insurance benefits for the loss of the Vehicle when he pled guilty to making a fraudulent insurance claim on the Vehicle. *Zurcher*, 379 S.C. at 138, 666 S.E.2d at 227–28. Moreover, the Policy clearly states that an insured is not entitled to benefits where the insured "has made fraudulent statements or engaged in fraudulent conduct." (ECF No. 22-6 p. 17). Therefore, Ironshore's Motion for Summary Judgment should be granted.

## IV.    CONCLUSION

Because an *Alford* plea has the same preclusive effect as a standard guilty plea, Fekete should be precluded from seeking insurance benefits for the loss of the Vehicle. Fekete pled guilty to third-degree arson and making a fraudulent insurance claim on the

exact vehicle that is the subject of this lawsuit. The alleged damages which Fekete complains of resulted from the arson that he pled guilty to and the fraudulent claim he made regarding the Vehicle. Therefore, Ironshore's Motion for Summary Judgment is granted.[2]

IT IS SO ORDERED.

April 11, 2018
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge

---

[2] Defendant Ironshore's Motion to Join Encompass' Motion for Summary Judgment (ECF No. 25) is dismissed as moot.